WARDLAW *et al.*, trustees, *et al. v.* McNEILL, adm'r.

.A decree in chancery declaring that certain described lands, title to which is in the defendant in the case, shall be held by the defendant in trust for the sole and separate use of the plaintiff, is admissible in evidence as color of title, upon which the plaintiff and those claiming under him may base a claim to a prescriptive title.

Argued October 19, — Decided November 25, 1898.

Levy and claim. Before Judge Butt. Chattahoochee superior court. March term, 1898. ·

*Brannon, Hatcher & Martin, Miller & Miller* and *E. T. Hickey,* for plaintiffs in error.

*C. J. Thornton* and *J. M. McNeill,* contra.

COBB, J. An execution issued upon a judgment rendered on September 25, 1876, against W. E. Wardlaw and M. C. Wardlaw, was levied upon certain lands, and a claim thereto was

interposed by W. E. Wardlaw and E. T. Hickey as trustees for their children, and by L. Pearl Hickey. At the trial the plaintiff introduced evidence to the effect, that M. C. Wardlaw obtained title to the lands in 1846 and 1852, went into possession of them, and remained in possession until his death, which occurred in 1886; that his widow, Mary Jane Wardlaw, then held possession of the property until her death, in 1895; and that in 1876 the lands were set apart as a homestead to M. C. Wardlaw as the head of a family consisting of himself and his wife. The plaintiff also introduced in evidence tax digests showing that the lands in dispute were returned for taxes in the name of M. C. Wardlaw for the years 1877 and 1881. The claimants introduced in evidence tax digests showing that the lands were returned for taxes in the name of M. C. Wardlaw as agent for his wife in the years 1882, 1883, 1884, 1885, and 1886, and that from 1886 to 1895 they were returned in the name of Mary Jane Wardlaw. They introduced also the will of Mary Jane Wardlaw, probated January 6, 1896, by which she devised all of her property to the children of W. E. Wardlaw and the children of Mrs. G. C. Hickey, and appointed W. E. Wardlaw and E. T. Hickey trustees for them; also the will of her father, probated June 9, 1854, by which he gave to her and her children a seventh-interest in his estate, not to be subject to or belong to her husband, but to be for the sole and separate benefit of herself and her children. M. C. Wardlaw was appointed by the last-mentioned will as trustee to manage the property. The claimants offered in evidence the record of a suit brought in 1883 by Mary Jane Wardlaw against M. C. Wardlaw, and a consent decree rendered therein in 1884, in which suit she alleged that the proceeds of her share of the property devised to her by the will of her father had been converted by her husband, the defendant, to his own use, and invested in other property in his own name; and she prayed for an accounting, and that he be required to convey and turn over to her her interest in such real and personal property held by him as had been purchased with the trust fund. The decree was as follows: "It appearing to the court that said Micajah C. Wardlaw as trustee for Mary J. Wardlaw and her children, two in

number, did, on November 1st, 1854, come into possession of $4,000, and that said Micajah C. Wardlaw did for his own purposes use and appropriate the same, and that said fund now amounts to $12,270, one third of which amount was for the sole use and benefit of Mary J. Wardlaw, and it further appearing that all the real and personal property of said Micajah C. Wardlaw was purchased with the fund aforesaid, and is admitted by defendant in said bill to have been so purchased, it is, the premises considered, and all parties consenting thereto, ordered and decreed by the court that said Micajah Wardlaw do hold the title of the following real estate, to wit [describing a part of the land in dispute in the present case], and the following personal property [describing it], in trust for the sole and separate use of said M. J. Wardlaw until the further order of this court." It was admitted that the plaintiff was not a party to the bill and decree. On objection of the plaintiff, the court refused to allow the bill and decree, or the decree, to go to the jury; and to this the claimants excepted.

The claimants offered to prove by W. E. Wardlaw, that he was one of the defendants in the execution; that the debt was made prior to the constitution of 1868, and was his individual debt, and was closed by a note dated May 20, 1870, which was signed by his father, M. C. Wardlaw, as security, the note being the foundation of the judgment on which the execution issued. On the objection of the plaintiff, the court refused to allow this testimony to go to the jury; and to this the claimants excepted. E. T. Hickey testified that Mrs. M. J. Wardlaw took possession of the land in dispute immediately after the decree was rendered in her favor in 1884, and remained in peaceable possession of the same until her death in 1896; and after her death the claimants went into possession of it. The court, on motion of plaintiff's counsel, directed the jury to return a verdict finding the property levied on subject, and to the action of the court in directing this verdict the claimants excepted.

The exception as to the refusal of the court to allow the testimony of W. E. Wardlaw, referred to above, to go to the jury, was not argued before this court either by brief or otherwise;

and such being the case, under repeated adjudications we treat the point as having been abandoned.    In the brief filed by counsel for plaintiffs in error it is not contended that the decree offered in evidence was admissible for any other purpose than as color of title.  Of course it could not bind the judgment creditor who was no party to the proceeding in which the decree was rendered.    *Elwell* v. *New Eng. Mortgage Co.*, 101 *Ga.* 496. Was it admissible as color of title upon which to found a prescription?    In the case of *Beverly* v. *Burke*, 9 *Ga.* 440, Judge Lumpkin asks the question, what is meant by color of title, and then proceeds to answer it in the following manner:    "It may be defined to be a *writing*, upon its face *professing* to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used, — a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law.    The very fact of setting up a statutory title excludes the idea of a rightful or legal title.    The length of the possession, and its nature and character, are the only tests."    In *Field* v. *Boynton*, 33 *Ga.* 239, it is said that color of title is "anything in writing connected with the title which serves to define the extent of the claim." In *Burdell* v. *Blain*, 66 *Ga.* 169, color of title is defined as "anything in writing which serves to define the extent and character of the claim to the land, with parties from whom it may come and to whom it may be made.  A paper of this character is admissible as color of title on which to base a prescription."    See also *Veal* v. *Robinson*, 70 *Ga.* 809.

It was provided in the decree that M. C. Wardlaw should hold the title to certain real estate in trust for the sole and separate use of M. J. Wardlaw, until the further order of the court. There being no parties to this proceeding except Wardlaw and his wife, of course no one is bound by this judgment impressing the title which Wardlaw held with the trust in favor of his wife, except himself and his wife, and those who claim under either, subsequent to the rendition of the decree. · The rights of the creditor whose judgment was in existence at the time of the rendition of the decree are not affected, in any way, by the decree as a judgment.    If at the time of the rendition of this

decree M. C. Wardlaw had delivered to his wife an instrument in writing, in which he declared that he held the real estate described in the decree in trust for her sole and separate use, it would not be contended that such a writing would not be color of title upon which a prescription could be based. Is it any less color of title because the writing happens to be a decree of a court which is assented to by both parties to the transaction, instead of a private writing delivered voluntarily by one party to the other? While the decree does not bind anybody as a judgment except the parties to the litigation and their privies, it is evidence in favor of any one who claims under it, and when necessary as a link in a chain of title it may be introduced in evidence against persons who are not parties to the litigation. In the case of Barr v. Gratz, 4 Wheat. (17 U. S.) 213, Mr. Justice Story uses this language: "Another error alleged is, that the court allowed the decree of the circuit court, in the chancery suit between Michael Gratz and John Craig and others, to be given in evidence to the jury. In our opinion this record was clearly admissible. It is true that, in general, judgments and decrees are evidence only in suits between parties and privies. But the doctrine is wholly inapplicable to a case like the present, where the decree is not introduced as per se binding upon any rights of the other party, but as an introductory fact to a link in the chain of the plaintiff's title, and constituting a part of the muniments of his estate; without establishing the existence of the decree, it would be impossible to establish the legal validity of the deed from Robert Johnson to the lessors of the plaintiffs, which was made under the authority of that decree; and under such circumstances to reject the proof of the decree, would be, in effect, to declare that no title derived under a decree in chancery was of any validity except in a suit between parties and privies, so that in a suit by or against a stranger it would be a mere nullity. It might with as much propriety be argued, that the plaintiff was not at liberty to prove any other title-deeds in this suit, because they were res inter alios acta." In the case of Hardwick v. Hook, 8 Ga. 354, it was held, that "A decree in chancery is evidence, not merely of the fact of its rendition, but also of all the consequences re-

sulting therefrom.   It may be given in proof against persons who were not parties to the bill, in support of the plaintiff's right or title to sue."   Judge Lumpkin in the opinion says: "But it is said that Hardwick was not a party to the bill, and that therefore the decree was inadmissible against him — that it was res inter alios acta.   Judgments and decrees are not only evidence of the fact of their rendition, but of all the legal consequences resulting from that fact, whosoever may be the parties to the suit in which it is offered in evidence.   The record may be introduced where it constitutes one of the muniments of the party's title to an estate, as where a deed was made under a decree in chancery.   Barr *v.* Gratz, 4 Wheat. 213.   So here it is competent, by the decree, to establish the plaintiff's right, as receiver, to maintain this action.   The defendant is not affected by it.   He is entitled to every defense which he might have had, had the action been brought by Harris, the creditor, and Brantley, the trustee of Mrs. Walden."   See also *Bussey* v. *Dodge*, 94 *Ga.* 584.

The decree should have been admitted in evidence solely for the purpose of showing color of title upon which to base a prescription.   Such a decree, in connection with evidence showing adverse possession for seven years, would give a title by prescription as against the lien of a judgment rendered against the defendant in the decree before the prescription began to run, if there was no levy on the property until after the prescriptive title had ripened.   *Johnson* v. *Neal*, 67 *Ga.* 528.   If, however, it should appear that the suit between Wardlaw and his wife was collusive and fraudulent, then no prescription could be based upon such a decree as color of title.   Civil Code, § 3589.

*Judgment reversed.   All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*